**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MARSHA MESSINA,   Case No. 1:12-cv-95

      Plaintiff,   Barrett, J.
                                                         Bowman, M.J.

   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff George Craig filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In October 2008, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of July 17, 2008 due to physical impairments. (Tr. 161-67). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On June 18, 2010, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 26-73). At the hearing, the ALJ heard testimony from Plaintiff and Christopher Rymond, an impartial vocational expert. On October 21, 2010, ALJ Sheila Lowther denied Plaintiff's applications in a written decision. (Tr. 11-20).

1

The record on which the ALJ's decision was based reflects that Plaintiff was 39 years-old on her alleged onset date and had a limited education. She had past relevant work as a laborer, construction worker and office clerk.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "lumbar degenerative disc disease with radiculopathy, mild cervical spondylosis, and a history of juvenile rheumatoid arthritis and Raynaud's phenomenon." (Tr. 13). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform a range sedentary work with the following limitations:

> She may lift/carry up to ten pounds frequently or twenty pounds occasionally. She may stand/walk for two hours in an eight-hour workday, and she may sit for six hours in an eight-hour workday, with normal breaks. She may not climb ropes, ladders or scaffolds. She may occasionally stoop, kneel, crouch, crawl, or reach overhead bilaterally. She should avoid any concentrated exposure to extreme cold or vibrations.

(Tr. 15). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, limited education and work experience, and the RFC, the ALJ concluded that Plaintiff could perform her past relevant work in the customer service field. (Tr. 19). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI and/or DIB. (Tr. 20).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff maintains that the ALJ erred by: 1) failing to give controlling weight to the opinions of Plaintiff's treating physicians; 2) improperly evaluating Plaintiff's credibility and subjective complaints; and 3) failing to consider the combined effect of all of Plaintiff's impairments in her RFC assessment and hypothetical questions to the VE. Upon careful review and for the reasons that follow, the undersigned finds Plaintiff's assignments of error are not well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a

whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

**B. Specific Errors**

*1. The ALJ's Alleged Disregard of Treating Physician's Opinion*

Plaintiff's first assignment of error alleges that the ALJ erred by failing to give controlling weight to the opinions of her treating physicians. 20 C.F.R. § 404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.*

Plaintiff asserts that the ALJ's decision is not substantially supported because she gave "little consideration" to the records of Drs. Simmons and Wunder, two of her treating physicians.[1] Plaintiff notes that Dr. Wunder determined that the she had diminished range of motion in her cervical spine, and some tenderness and decreased range of motion in the low back. Dr. Wunder further indicated that the Plaintiff suffered from cervical spondylosis, a history of abnormal nerve conduction studies, Fibromyalgia and protein C deficiency. Dr. Wunder's treatment notes also indicate that Plaintiff's Fibromyalgia "complicates her pain picture" (Tr. 640).

With respect to Dr. Simmons, Plaintiff' notes that he performed several nerve blocks at L4, L5 and S1 and epidural injections in the cervical region from May 2009

---

[1] Plaintiff also contends that the ALJ failed to explain her reasons for assigning little or no weight to the opinions of Drs. Sapp and Everson. (Doc. 6 at 13.) However, Plaintiff fails to provide any basis for such assertion and/or develop this argument in any meaningful way. The Court has no obligation to search the record to develop and support the arguments of the parties. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir.2006). Rather, the Court's review is limited to the specific issues the parties raise. *Id.* Plaintiff's conclusory and unsupported allegations fail to identify or sufficiently explain whether the record contains evidence that is inconsistent with the ALJ's findings. Furthermore, as detailed below any treatment notes of Drs. Sapp and Everson do not qualify as medical opinions as defined by agency regulations.

5

through January 2010.  Dr. Simmons diagnosed the claimant with lumbar radiculopathy, lumbar facet arthropathy, lumbar degenerative disc disease, cervical herniated disc C6-7, C5-6, rheumatoid arthritis, bilateral sacroiliitis, lumbar degenerative disc disease at L4-L5 and facet arthropathy, herniated disc on the right at C6-C7 as well as bulging disc at C5-C6.  (*See* Tr. 620-636).

Plaintiff argues that the ALJ "ignored" these findings, and instead credited the findings of Dr. Owens, who did a consultative examination.  However, to the extent that Plaintiff contends that the ALJ failed to accord controlling weight to the opinion of Drs. Simmons and Wunder, Plaintiff's argument misses the mark because Dr. Simmons' nor Dr. Wunder's records contain no such opinions.  Only opinions of treating physicians are entitled to controlling weight.  "Medical opinions are statements from physicians and psychologists...that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §404.1527(a)(2).  Mere "observations, without more, are not the type of information from a treating physician which will be provided great weight," as medical opinions require "assertions involving judgments about a patient's 'symptoms, diagnosis and prognosis.'" *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (citing 20 C.F.R. I404.1513(b), 404.1527(a)(2)).

In this case, the record contains only treatment notes from Dr. Simmons and Dr. Wunder detailing their observations and treatment of Plaintiff.  Neither Dr. Wunder nor

Dr. Simmons opine that Plaintiff is disabled, or unable to gain or maintain employment. Their treatment notes do not contain any opinions at all relevant to Plaintiff's functional limitations, and therefore are not evidence of limitations that were ignored by the ALJ. There is no doubt that the treatment notes from Drs. Simmons and Wunder lend credence to the fact that Plaintiff suffers from neck and back pain. In fact, the ALJ specifically found that Plaintiff's lumbar degenerative disc disease with radiculopathy, mild cervical spondylosis to be "severe" impairments. (Doc. 6-2 at 11). However, a diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual. *See Young v. Secretary of Health and Human Services*, 925 F.2d 146, 151 (6th Cir. 1990).

Furthermore, as noted by the Commissioner, Dr. Wunder's notes indicate only mild objective abnormalities "without clear neural compression" and note that Plaintiff felt that she had made some progress in physical therapy (Tr. 640, 650). Likewise, Dr. Simmon's treatment notes recorded improvements after Plaintiff received medications and injections. (Tr. 581, 584, 628, 631, 638, 640, 671, 673-74, 676). The ALJ explicitly discussed Plaintiff's treatment with Dr. Simmons, including her treatment with injections and her subjective complaints, as well as Plaintiff's "several visits to the Mayfield Clinic" between February and April 2010, where Plaintiff was treated by Dr. Wunder and Dr. Bailey. (Tr. 17).

Additionally, Plaintiff asserts that the ALJ's RFC finding is somehow flawed because her decision fails to indicate that she considered that Plaintiff suffers from fibromyalgia. The record indicates that in March 2010, Dr. Wunder found that Plaintiff "was tender in 16/18 areas for fibromyalgia." (Tr. 648). Thereafter, in April 2010, Dr.

7

Wunder further noted that Plaintiff "has background fibromyalgia which complicates her pain picture." (Tr. 640). The ALJ's decision does not mention fibromyalgia. Such an omission, however, does not call into question the ALJ's decision.

Notably, ["i]t is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08, 2006 WL 305648, *8-9 (6th Cir. Feb. 9, 2006). Here the ALJ cites to Dr. Wunder's treatment notes in his step-two analysis of Plaintiff's severe impairments. (Tr. 13). Thus, the fact that the ALJ does not specifically state that Dr. Wunder's treatment notes twice mention fibromyalgia, does not mean that the ALJ failed to consider the evidence. More importantly, even assuming that Plaintiff has been properly diagnosis with fibromyalgia, the Sixth Circuit has determined that "a diagnosis of fibromyalgia does not automatically entitle" a claimant "to disability benefits." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 805-06 (6th Cir. 2008) (declining to find disability from one-time diagnosis of fibromyalgia which subsequently improved or was stable). Here, other than the two citations by Dr. Wunder, Plaintiff fails to point to any other record evidence relating to fibromyalgia, nor assert any functional limitations associated with fibromyalgia. Accordingly, Plaintiff's contention is not well-taken in this regard.

In sum, the ALJ's decision indicates that she thoroughly reviewed the evidence of record and properly weighed the opinion evidence. As noted by the ALJ the record does not contain any medical opinions from any treating source. The ALJ reasonably relied

on the findings of Dr. Owens, who performed extensive testing of Plaintiff's muscle strength and range of motion, and the findings of the state agency physicians, who supported their assessment of her limitations with specific findings from the record. See 20 C.F.R. § 404.1527(d)(3) (explaining that the more a medical source explains the opinion and presents relevant evidence to support the opinion, particularly medical signs and laboratory findings, the more weight that opinion is due).

  2. *Plaintiff's Credibility*

Plaintiff's second assignment of error asserts that the ALJ's credibility determination is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ's credibility assessment failed to comply with the requirements set forth in SSR 96-7p. Namely, Plaintiff asserts that her subjective complaints were supported by the objective evidence or record. Plaintiff's contentions are unavailing.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS*, 753 F.2d 517, 519 (6th Cir. 1985). In this regard, Social Security Ruling 96-7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*. The ALJ's credibility decision must also include consideration of the following factors:  1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the

individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96-7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

Upon close inspection, the undersigned finds that the ALJ properly considered the requisite factors in making her credibility determination. Here, the ALJ determined that Plaintiff's complaints of disabling pain were only partially credible in light of the objective evidence, Plaintiff's inconsistent statements and her reported daily activities. The ALJ noted that the medical evidence clearly indicates that Plaintiff has developed lumbar disc disease and mild cervical spondylosis. (Tr. 19). However, many of the medical tests produced normal results, and the abnormal results were relatively mild in intensity. The ALJ noted that several physicians found Plaintiff's allegations regarding the pain and severity of her impairments were inconsistent with objective testing and other medical findings. Notably, the ALJ also discussed that "many of the medical tests produced normal results, and the abnormal results were relatively mild in intensity." (Tr. 19).

11

As the ALJ noted, Dr. Fritzhand observed normal range of motion in Plaintiff's cervical and lumbar spine, shoulders, elbows, wrists, feet, hips, knees, and ankles, and, although Plaintiff walked with a limp, she appeared comfortable when in sitting and supine positions. (Tr. 16, 474-78). The ALJ further noted Dr. Owen's observations that Plaintiff had normal range of motion in all extremities and the cervical and lumbar spine, good muscle tone, and 5/5 bilateral strength "in all muscle groups," even "with questionable effort." (Tr. 17, 693-94). Dr. Owens' report further indicates Plaintiff was "able to rise from a sitting position without assistance, stand on tiptoes, heels and tandem walk without problems." (Tr. 17, 692). Moreover, although Plaintiff alleged that she was unable to bend, Dr. Fritzhand noted that Plaintiff could forward bend without difficulty, and Dr. Owens noted that Plaintiff was "able to bend and squat without difficulty." (Tr. 16-17, 312, 480, 692).

Furthermore, contrary to Plaintiff's assertions that her complaints of disabling pain were supported by the objective evidence, diagnostic and imaging studies generally reviewed normal or mild findings.[2] In early 2009, Dr. Everson noted that a nerve conduction study revealed mild bilateral S1 radiculopathy. (Tr. 16, 533). January 2009 x-ray examinations of Plaintiff's right and left knees were normal. (Tr. 16, 545-50). A March 2009 lumbar spine MRI showed that some mild-to-moderate facet arthropathy, but no disc protrusion, spinal stenosis or nerve root compromise. (Tr. 16, 542). The ALJ

---

[2] Additionally, Plaintiff's argument that the ALJ should have found her to be credible because her testimony was consistent with the findings of her treating physicians lacks merit. As detailed above, the records from Plaintiff's treating physicians do not establish disability and/or properly support Plaintiff's claims of disabling impairments.

12

also noted that a May 2009 cervical spine MRI provided evidence of disc herniation that "barely contacts and does not compress the spinal cord," a "disc osteophyte which causes moderate encroachment on the left neural foramen," and a fairly diffuse disc bulge or protrusion at C5-6 that "results in some mild encroachment on the left neural foramen but without definite neural impingement." (Tr. 17, 594). Dr. Bailey, a colleague of Dr. Wunder's at the Mayfield Clinic, characterized these findings as "[v]ery mild DD L-spine without clear neural compression." (Tr. 17, 650). Dr. Bailey further determined that Plaintiff's cervical imaging studies as showing mild spondylosis but not enough to justify surgery. (Tr. 640). The record further includes a normal EMG study in March 2010, showing no evidence of cervical radiculopathy, plexopathy, peripheral neuropathy, or carpal tunnel syndrome. (Tr. 640, 643).

In additional to the objective evidence, the ALJ's credibility determination also properly considered Plaintiff's treatment history, inconsistent statements and daily activities. With respect to Plaintiff's treatment history, the ALJ noted that Plaintiff received nerve blocks, cervical and lumbar injections for over a year, which the record indicates provided pain relief. (Tr. 17, 581, 584, 631). Plaintiff also reported decreased pain and increased range of motion after completing physical therapy. (Tr. 640. 671, 673-74, 676).

The ALJ also considered Plaintiff's reported daily activities which in March 2009 consisted of fixing simple meals for her young children, getting the children on the bus, washing clothes, performing light housework, grocery shopping twice a week, talking on the phone and watching movies. (Tr. 18-19). As correctly noted by the Commissioner, while these activities do not necessary establish an ability to work, the ALJ reasonably

considered these activities when evaluating Plaintiff's allegations of disabling symptoms. (Tr. 18). See 20 C.F.R. § 404.1529(c)(3)(i) (relevance of activities when evaluating pain and functional limitations); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (permitting an ALJ to consider daily activities such as housework and social activities in evaluating complaints of disabling pain).

Last, the ALJ also considered Plaintiff's inconsistent statements when evaluating her credibility. The record indicates that Plaintiff had a substantial history of alcohol and cocaine abuse. Notably, treatment notes from Clermont Recovery Center indicate that Plaintiff reported that she last worked on July 17, 2008, but "lost [her] job when she was arrested" for possession of cocaine (Tr. 463, 465). Plaintiff asserts, however, that she lost her job because she missed too much work due to pain and numbness caused by her impairments. (Tr. 31; Doc. 6, 7). Moreover, as noted by the ALJ, Plaintiff reported to Dr. Seifert in November 2008 that she had last used alcohol and cocaine four months earlier, or around July 2008 (Tr. 19, 500). However, that same month, she told Dr. Fritzhand that she had never seen a psychiatrist for mental health treatment and had no history of alcohol abuse. (Tr. 19, 478). Such evidence is properly considered by the ALJ in making his credibility determination. *See Ditmer v. Astrue*, 2012 WL 642851 (S.D. Ohio Feb. 28, 2012) (J. Beckwith) (noting that "other courts have recognized the relevancy of the claimant's inconsistent statements concerning the use of alcohol and drugs in evaluating credibility").

Based on the foregoing, the undersigned finds that the ALJ's decision adequately sets forth the reasons for her credibility finding and shows she considered the required factors in determining Plaintiff's credibility. See 20 C.F.R. § 416.929(c). In light of the ALJ's opportunity to observe Plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. *See also Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir.1987). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

    3.    *Alleged Vocational Errors*

Plaintiff's final assignment of error appears to assert that the ALJ hypothetical questions to the vocational expert failed to properly consider all of Plaintiff's impairments. The Sixth Circuit has repeatedly made clear that a hypothetical question need only reference plaintiff's credible limitations; unsubstantiated complaints are not to be included in the question. *See McKenzie v. Commissioner of Soc. Sec.*, No. 99–3400, 2000 WL 687680, at * 4 (6th Cir. May 19, 2000). Here, the ALJ selected hypothetical questions which accurately described Plaintiff's limitations and the extent of her ability to perform work as supported by the evidence.

Plaintiff asserts that she has been diagnosed with lumbar degenerative disc disease with radiculopathy, cervical spondylosis, juvenile rheumatoid arthritis, Raynaud's phenomenon, history of abnormal nerve conduction studies, Fibromyalgia, and protein C deficiency. Plaintiff asserts that such diagnoses supports her testimony that she can walk about ten minutes on a flat level surface, cannot lift more than 10 pounds nor sit for

more than fifteen minutes at a time. (Doc. 6 at 19). However, as noted above, it is well established that a mere diagnosis or catalogue of symptoms does not indicate the functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment).

In this case, the ALJ properly determined that Plaintiff's subjective complaints relating the functional limitations associated with her impairments were not fully credible. Thus, the ALJ was not required to include limitations in her hypothetical question that were not supported or not credible. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). The VE's testimony provided substantial evidence supporting the ALJ's finding that Plaintiff was not disabled because she could perform a significant number of jobs (Tr. 616–20). *See Hall v. Bowen*, 837 F.2d 272, 273, 275-76 (6th Cir.1988) (1,350 jobs is a significant number of jobs in Dayton area and national economy).

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

*/s Stephanie K. Bowman*

Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MARSHA MESSINA, | Case No. 1:12-cv-95 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).